UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY OSBORNE,

Plaintiff,

v.                                                                    Case No. 1:25-cv-355
                                                                      Hon. Hala Y. Jarbou

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review

of a final decision of the Commissioner of Social Security (Commissioner) which denied her

claims for supplement security income (SSI).

Plaintiff filed an application for SSI on December 15, 2022, alleging disability

beginning on December 15, 2021.  PageID.64. Plaintiff identified her disabling condition as

recurrent giant cell tumor of the bone.  PageID.300.  The administrative law judge (ALJ) observed

that, among other things, plaintiff "alleges disability resulting from chronic left leg pain post tumor

resection surgery."  PageID.71.  Prior to filing for disability, plaintiff completed the 12th grade

and has no past relevant work.  PageID.75, 301. An ALJ reviewed plaintiff's claim *de novo* and

entered a written decision denying benefits on April 29, 2024.  PageID.64-77.  This decision, which

was later approved by the Appeals Council, has become the final decision of the Commissioner

and is now before the Court for review.

### I.    LEGAL STANDARD

1

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step

analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis

v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied

in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of December 15, 2022.  PageID.66.  At the second step, the ALJ found that plaintiff had severe impairments of obesity, residual effects of left leg sarcoma resection, and peripheral neuropathy. *Id*.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.69.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she requires a sit/stand option allowing her to sit or stand alternatively at will provided she is not off task more than 10% of the workday, with any changes in posture from sitting to standing to walking falling within the 10% off task time limitations, and with transitions every 30 minutes. The claimant also requires the ability to use a knee brace on one leg while standing and walking. Furthermore, the claimant can only occasionally balance, stoop, crouch, kneel, crawl, and climb stairs, and she can never climb ladders. The claimant must also avoid all exposure to vibration and hazards such as dangerous moving machinery and unprotected heights.

PageID.70.  The ALJ also found that plaintiff has no past relevant work.  PageID.75.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level.  PageID.76-77.  Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as router (19,000 jobs), cashier (6,000 jobs), and sales attendant (6,000 jobs).  PageID.76.  Accordingly, the ALJ

determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 15, 2022 (the date she filed the application) through April 29, 2024 (the date of the decision).  PageID.77.

### III.    DISCUSSION

Plaintiff set out two errors:

**A.    The Administrative Law Judge (ALJ) erred by failing to properly evaluate the supportability and consistency factors while evaluating the opinion of the consultative examiner. This error left the residual functional capacity (RFC) and decision as a whole not supported by substantial evidence.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  *See* 20 C.F.R. §416.945.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe" (*see* 20 C.F.R. §416.945) "based on all the relevant medical and other evidence in [the claimant's] case record" (20 C.F.R. §416.920(e)).

Under the regulations, the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a).  Rather, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4)

specialization; and, (5) other factors. *See* 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency". 20 C.F.R. § 416.920c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Plaintiff contends that the ALJ erred by failing to properly evaluate the supportability and consistency factors when he concluded that the April 28, 2023, opinion of the consultative examiner, Dr. Lazzara (*see* PageID.522-528), was "unpersuasive". The ALJ addressed the doctor's opinion as follows:

In late April 2023, the claimant attended a consultative examination with Scott Lazzara, M.D. At this evaluation, the claimant reported experiencing chronic neuropathic pain and tenderness to her left knee. The claimant noted her recent prescription for a knee brace, but acknowledged that "she does not take anything for pain." Dr. Lazzara observed the claimant's left knee surgical scar and noted that she ambulated with a mild left lurching gait, and that she had tenderness to the left knee, diminished range of motion of the left knee, diminished sensation to the left lower extremity distally to the knee, diminished reflexes in the left knee and ankle as compared to the right, mild difficulty getting on and off the examination table, mild difficulty heel and toe walking, mild difficulty standing for 3 seconds on the left foot, and moderate difficulty squatting. However, Dr. Lazzara stressed that the claimant had intact ability to ambulate without an assistive device; otherwise normal musculoskeletal range of motion; intact motor strength; intact peripheral pulses; no joint laxity, crepitance, or effusion; and no edema. Ultimately, Dr. Lazzara assessed the claimant with status post giant cell tumor resection with residual findings of peripheral neuropathy affecting the branches of the sciatic nerve as well as findings of chronic left knee strain due to compensation (Ex. 5F). . . .

6

Following his April 2023 consultative examination, Dr. Lazzara advised that the claimant should be limited to standing 2 to 4 hours in an 8-hour workday, and noted that the evidence supported the need for a walking aid to reduce pain. Dr. Lazzara also indicated that the claimant should be limited to lifting, carrying, pushing, and pulling less than 10 pounds. Furthermore, Dr. Lazzara suggested that the claimant could do no more than occasional bending, and no more than occasional squatting "with assist" and climbing stairs "with assist" (Ex. 5F).

I find Dr. Lazzara's opinion unpersuasive. Although Dr. Lazzara's examination notes could be viewed as supportive of the limitations he proposed, I note that he only had 1 opportunity to examine the claimant in person before offering his opinion.   However, Dr. Lazzara's opinion is inconsistent with a complete review of the medical evidence and the record as a whole for the entire period under consideration, including the claimant's history of treatment, the objective medical studies, the clinical examination findings, and the claimant's reported activities of daily living, as discussed above.  For example, Dr. Lazzara suggested that the evidence supported the need for a walking aid, but the medical evidence establishes that the claimant has consistently demonstrated the ability to ambulate without the use of an assistive device at appointments with her treating and examining medical providers. I also stress that Dr. Lazzara phrased portions of his opinion using rather vague terminology, as he did not explain what he meant when suggesting that the claimant could only occasionally squat and climb stairs "with assist."   Such vague language renders Dr. Lazzara's opinion even less persuasive.

PageID.72-75.

Plaintiff contends that the ALJ did not properly address the "supportability" or "consistency" factors.  The ALJ conceded that Dr. Lazzara's examination notes "could be viewed as supportive of the limitations he proposed".  PageID.75.  However, the ALJ discounted the doctor's opinion that plaintiff needed a walking aid based on the relationship with plaintiff (Dr. Lazzara examined plaintiff once) and the doctor's use of "vague language" in describing two of plaintiff's current abilities, *i.e.*, plaintiff could squat and arise "occas w/assist" and climb stairs "w/assist".  PageID.75, 522.

The ALJ's observations are not a sufficient basis for rejecting all of the limitations set forth in Dr. Lazzara's report.   While frequency of examinations is a relevant consideration and

can demonstrate that a doctor "has a longitudinal understanding" of a claimant's impairments[1], the ALJ does not explain how the doctor's lack of past experience with plaintiff rendered his examination as unsupported.  The ALJ's rationale could be applied to discount the opinion of any doctor who performed one consultative examination of a Social Security claimant.[2]

With respect to an assistive device, Dr. Lazzara stated that clinical evidence supports the need for a walking aid to reduce pain, noting that "[t]he patient walks with a mild left lurching gait without the use of an assist device", that "[s]he has difficulty with orthopedic maneuvers due to her pain", and that "[s]he compensates with a mild left limp."  PageID.523, 528. Here, the ALJ does not address medical evidence which contradicts Dr. Lazzara's opinion other than the general statement that plaintiff "has consistently demonstrated the ability to ambulate without the use of an assistive device at appointments with her treating and examining medical providers."  PageID.75.  Plaintiff's ability to ambulate without an assistive device does not speak to whether she experiences pain while walking with a lurching gait and limp.

Finally, the ALJ found Dr. Lazzara's entire opinion "even less persuasive" because Lazzara used the "rather vague terminology" of "w/assist" and did not explain the meaning of the term as it applied to plaintiff's ability to "Squat & Arise from Squatting" and to "Climb Stairs". *See* PageID.75, 522.  However, the ALJ did not explain how Dr. Lazzara's use of this terminology in evaluating plaintiff's ability to conduct 2 of the 23 listed actions (PageID.522) rendered Lazzara's entire report "less persuasive."

---

[1] *See* 20 C.F.R. § 416.920c(3)(ii) ("The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).").

[2] This same rationale could be used to discount the opinion of a non-examining consultant who reviewed medical records and developed an RFC without ever examining the claimant.

Based on this record, the ALJ's decision is not supported by substantial evidence. After observing that "Dr. Lazzara's examination notes could be viewed as supportive of the limitations he proposed," the ALJ failed to set out adequate reasons for rejecting Dr. Lazzara's entire opinion as unpersuasive.   An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  *See Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (quoting *Diaz*). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).   Here, the Court cannot trace the path of the ALJ's reasoning for finding Dr. Lazzara's opinion was unpersuasive.  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Dr. Lazzara's opinion.

> **B.     The ALJ's decision was not supported by substantial evidence because [he] failed to build a logical bridge between [his] RFC and the evidence.  [He] did not explain how [he] arrived at the sit/stand opinion in the RFC, and this failure warrants remand.**

Plaintiff contends that the ALJ's RFC determination is flawed because he did not explain why plaintiff could work with a sit/stand option, *i.e.*, "[plaintiff] requires a sit/stand option allowing her to sit or stand alternatively at will provided she is not off task more than 10% of the workday."  PageID.70.

The ALJ does not cite or rely on any medical opinion which suggests that plaintiff could work eight hours with a sit/stand option.  As discussed, the ALJ cited Dr. Lazzara's opinion that plaintiff "should be limited to standing 2 to 4 hours in an 8-hour workday."  PageID.74.

However, the ALJ rejected that limitation when he found that Dr. Lazzara's opinion was "unpersuasive". PageID.75.

The ALJ also cited the opinion of State DDS non-examining medical consultant Trinh Nguyen, D.O., who reviewed the medical record in June 2023 and "concluded that the claimant retained the capacity to lift and carry 10 pounds frequently and up to 20 pounds occasionally, sit for about 6 hours total, and stand and/or walk for about 6 hours in an 8-hour workday." PageID.74. Upon reconsideration, State DDS medical consultant Barbara Menzies, M.D., agreed with Dr. Nguyen's opinion. *Id*. The ALJ found Drs. Menzies and Nguyen's opinions only partially persuasive, noting that:

> they each provided it at least 8 months ago and did not have an opportunity to review the current and more fully developed record, which provides a basis for finding additional limitations allowing for the use of a knee brace and a sit/stand option.

*Id*.

Here, the ALJ did not explain how the doctors' opinions or other evidence led to his conclusion that plaintiff could work for an eight-hour day using a sit/stand option. As discussed, the ALJ found Dr. Lazzara' opinion not persuasive and Drs. Menzies and Nguyen's opinions only partially persuasive. Based on this record, the Court cannot trace the path of the ALJ's reasoning which led him to conclude that plaintiff could work with a sit/stand option. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 24 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the RFC with respect to the sit/stand option.

## IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On

remand, the Commissioner should re-evaluate (1) Dr. Lazzara's opinion and (2) the RFC with

respect to the sit/stand option.


Dated: June 11, 2026                                    /s/ Ray Kent
                                                       Ray Kent
                                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).